**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

---------------------------------------------------×
EDWARD LONGOBARDI, and Class
members similarly situated,

      *Plaintiff,*

    *v.*

AMERICAN AIRLINES
GROUP INC.,

      *Defendant.*
---------------------------------------------------×

**CLASS ACTION COMPLAINT**

**3:24-cv-152**

**JURY REQUESTED**

Plaintiff Edward Longobardi, by his counsel, The Harman Firm, LLP, brings this action individually and on behalf of all other adversely affected flight attendants with disabilities by and through this Complaint against Defendant American Airlines Group Inc. ("Defendant" or "American Airlines").

**PRELIMINARY STATEMENT**

1. This case is about American Airlines' discriminatory policy (hereinafter referred to simply as the "Policy") that negatively affects employees with disabilities in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101–213, ("ADA")

2. American Airlines' Policy affects all disabled flight attendants because it is a blanket, company-wide policy.

3. Any flight attendant who needs to take time off work for an ADA qualifying medical reason is subjected to accruing 'absence points,' which are then used to harm the employee, including discipline and/or termination.

4. Absence points are given to flight attendants regardless of fault, and Defendant employs roughly 25,000 flight attendants.

5. Plaintiff, a gay man with HIV, was discriminated against and removed from work

because of his ADA disability.

6. Because of Plaintiff's HIV status, he is at a higher risk of complications or death from common illnesses. When Plaintiff contracts an illness, he must take time off work to monitor his health.

7. Plaintiff's disability required that he take intermittent ADA leaves as a reasonable accommodation.[1]

8. Plaintiff required multiple ADA accommodations in 2021, and Defendant was no longer willing to give Plaintiff a reasonable accommodation despite being able to. Plaintiff was then terminated in violation of the ADA.

## JURISDICTION

9. Pursuant to 28 U.S.C. §1331 this Court may properly hear Plaintiff's claims as they arise under a federal statute.

10. Plaintiff timely filed with the Equal Employment Opportunity Commission and received a Right to Sue letter. Plaintiff then timely filed this lawsuit within 90 days of receipt of the Right to Sue letter. Class Plaintiffs who have not yet filed with the Equal Employment Opportunity Commission may nonetheless do so with class certification and may proceed in this action.

## PARTIES

11. Plaintiff was and is a resident of Texas.

12. The Members of the Rule 23(b)(2) and Rule 23(b)(3) Class ("Class") are current and former employees of American Airlines who i) have disabilities within the meaning of the ADA, ii) are qualified for employment under the ADA, iii) are subject to American Airlines' illegal Policy regarding absence points, and iv) performed work responsibilities delegated to flight

---

[1] Plaintiff and the Class are not seeking damages under the Family Medical Leave Act ("FMLA") nor are they brining a claim under the FMLA, but Plaintiff did properly qualify for leaves under the FMLA. FMLA approved absences are the only way to avoid accruing absence points, any other leave, such as a qualified ADA leave, will accrue absence points.

2

attendants.

13. Defendant has a registered agent at 1209 Orange Street, in the City of Wilmington, County of New Castle, 19801, but conducts business worldwide with a principal place of business at 2400 Aviation Dr, Dallas, TX 75261.

## JURY DEMAND

14. Plaintiff respectfully requests a trial by jury.

## STATEMENT OF FACTS

15. Plaintiff had been an employee of Defendant for over two decades.

16. In 2003, Plaintiff was furloughed due to a company restructuring, but was brought back in 2004, when he began inquiring as to his rights to medical leave and ADA accommodations.

17. Plaintiff began working again in New York City, at LaGuardia International Airport. Thereat, he communicated with Eric Hodgeson, a Base Council Representative, about an accommodation for his HIV.

18. For years, Plaintiff was routinely approved for a reasonable accommodation in the form of intermittent leaves – Defendant also often applied Plaintiff's FMLA availability to these leaves[2] – to account for doctor's meetings and other necessary time off as a result of his disability, HIV.

19. Plaintiff's HIV causes his immune system to deteriorate, and he has difficulty fighting infectious diseases.

20. Even the flu and the common cold can cause serious complications for Plaintiff.

21. Plaintiff, during his tenure with Defendant, had a reasonable accommodation for his HIV in the form of intermittent leaves.

22. When Plaintiff would contract an illness, he would be afforded time off to monitor

---

[2] Simply because a leave is attributed to the FMLA does not disqualify it from also being a reasonable accommodation.

his health.

23. Plaintiff would miss flights due to his disability, but was not given 'attendance points.'

24. Attendance points are given to employees if they miss a shift and did not have a qualifying excuse, such as an FMLA designation.

25. Prior to 2021, Plaintiff had an annual, recurring reasonable accommodation that allowed him intermittent leaves, and, thus, he never received any attendance points for missed work because of his doctor appointments related to his HIV.

26. Years later, in 2021, Plaintiff was working in the Dallas area.

27. In March 2021, Plaintiff was forced to undergo a hip surgery. Plaintiff's surgery was postponed to April 2021 because of concerning blood work.

28. At this time, Plaintiff was improperly listed as 'separated' in American Airlines' employment status record systems.

29. This severely and critically impacted Plaintiff's ability to refile for his ADA accommodation.

30. Plaintiff, despite being improperly listed as 'separated,' had his FMLA exhausted by American Airlines in the same capacity as if he were an active employee.

31. Plaintiff took block FMLA leave during this period and was out of work through August 2, 2021, but returned after.

32. Plaintiff's manager during this time, Vicki Roberts, previously, had been the head of leave department.

33. Ms. Roberts had knowledge of Defendant's medical leaves, including for his hip surgery.

34. Going forward, nothing was ever done to accommodate Plaintiff's disability.

35. Immediately, Plaintiff's fate was sealed, as Defendant never again was willing to discuss any form of time off, even for medical emergencies.

36. Plaintiff was given a letter dated August 2, 2021 stating that Plaintiff was "absent without authorization since 05/17/2021."

37. This was untrue as Plaintiff had requested disability benefits on March 12, 2021 in anticipation of his leave, which was an approved leave.

38. Upon his return, in early August, Plaintiff was brought into a meeting on his attendance – a result of his surgery – and immediately an employee named Ursula Ball stated "I remember you from New York," which was where Plaintiff was first granted an accommodation.

39. Plaintiff had never met Ms. Ball before.

40. Plaintiff was then told that because American Airlines had placed him on a prior medical leave for his hip surgery, all future absences would be counted against him.

41. Further, this meant that Plaintiff's HIV could not be accommodated, as any meeting with a doctor would be an 'absence.'

42. Stated differently, Plaintiff's accommodation, which provided virtually zero business hardship, which had been routinely approved for decades, had now suddenly vanished because Defendant would not break from the Policy.

43. The Policy, as applied, is completely inflexible and it is impossible for a disabled flight attendant to avoid adverse employment actions because of their disability.

44. From September 7, 2021 to December 31, 2021, Plaintiff was given 13 absence points.

45. Plaintiff's absences occurred because his disability required he attend a doctor's appointment that prevented him from getting on a particular flight.

46. Flight attendants for Defendant work on 'sequences.'

47. A one day trip may be a sequence and missing that day would count as an absence point.

48. But if, say, a flight sequence ties to another, ie. Sequence 1 is New York to Chicago and Sequence 2 is Chicago to Dallas, missing Sequence 1 would demand the flight attendant miss Sequence 2.

49. Stated differently, a one day absence may result in two or three absence points being applied to a flight attendant's record.

50. Defendant's Policy offered no flexibility to Plaintiff, a person with a lifelong disability, the ability to work around his doctor appointments.

51. Further, when Plaintiff was on leave, he was stripped of his employment titles and was told that he was unqualified to fly. Defendant then applied absence points to Plaintiff while he was in the process of recertifying.

52. Defendant failed to engage the interactive process with Plaintiff.

53. Defendant has an arbitrary Policy that disparately and negatively impacts disabled employees.

54. Defendant had accommodated Plaintiff for years, but was unwilling to break from its inflexible Policy of only allowing leave as confined to text in an employee handbook.

55. Plaintiff required minor, intermittent leave notwithstanding his surgery. This was not a hardship for Defendant, but, rather, was a breach of Defendant's illegal and discriminatory Policy.

56. The Policy does not allow for Defendant to engage in the interactive process.

## Class Allegations

57. Plaintiff brings this action on behalf of himself and all other disabled flight attendants at American Airlines.

58. Defendant's Policy is applied to all flight attendants.

59. Defendant's Policy arbitrarily and illegally impacts employees with intermittent disabilities, such as HIV or ulcerative colitis.

60. Regardless of location, tenure, or disability, these differences do not matter for the purposes of determining Class entitlement to protections under the ADA.

61. Plaintiff had been working with HIV for Defendant for decades.

62. As soon as Plaintiff went on leave for a hip surgery, the accommodation for HIV that Plaintiff had for decades was suddenly revoked.

63. When employees take medical leave and, subsequently, are on additional medical leaves, for a disability, they are given absence points.

64. Absence points are given even with qualifying excuses as the Policy is a 'no fault' policy in applying points.

65. Defendant's Policy is a cycle that punishes disabled employees who need to take medical leaves.

66. This treatment happens to all disabled flight attendants who need time off work, which violates the Policy.[3]

67. Plaintiff's claims are one and the same as those of the Class and his interests are aligned with and will not hinder the Class.

68. Class treatment is necessary for Plaintiff's claims lest federal Courts around the Country will be flooded with similar cases, which leads to judicial backlog and inconsistent results.

69. The questions of law and fact that are common to all Class members greatly overshadow any differences or disputes.

---

[3] The only way to avoid absence points is via an approved FMLA leave. All other instances of an absence will incur an absence point.

7

70. Class treatment is not only superior but necessary in this action.

## CAUSES OF ACTION
## FIRST CLAIM

**Disability Discrimination, on behalf of Plaintiff and those similarly situated, by pattern and practice of failing to accommodate disabilities**

71. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 70 with the same force as though separately alleged herein.

72. Under the Americans with Disabilities Act, it is illegal to treat employees differently because of their disability status.

73. At all times, Plaintiff and the Class were employees under the meaning of the ADA.

74. Defendant has a discriminatory Policy that arbitrarily applies absence points to disabled employees and causes a disparate impact.

75. Accordingly, Plaintiff and the Class seek their wages, back pay, front pay, emotional distress damages, punitive damages, attorneys fees, costs, expenses, and any and all other remedies available under the law.

## SECOND CLAIM

**Failure to engage the interactive process, on behalf of Plaintiff and those similarly situated**

76. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 70 with the same force as though separately alleged herein.

77. Under the Americans with Disabilities Act, Defendant has a duty to engage the interactive process.

78. At all times, Plaintiff and the Class were employees under the meaning of the ADA.

79. Plaintiff has a qualifying disability under the Americans with Disabilities Act.

80. Members of the Class have a qualifying disability under the Americans with Disabilities Act.

9

81. In 2021, Plaintiff was forced to take a leave because of a surgery.

82. At the end of 2021, Plaintiff sought an accommodation in the form of intermittent leaves as necessary.

83. Instead of engaging in any interactive process, Defendant prohibited Plaintiff from continuing his employment.

84. Defendant's Policy is per se illegal as it fails to engage in the interactive process.

85. Specifically, Defendant does not address the cost-detriment of allowing a particular flight attendant time off work.

86. Instead, any disabled flight attendant is given an attendance point if they miss a shift due to their disability.

87. The only time an absence point is not given, is if the flight attendant is granted an FMLA leave.

88. Simply applying the FMLA or saddling a flight attendant with an absence point is not sufficient to engage the interactive process under the ADA.

89. Defendant levied absence points onto Plaintiff when he could have otherwise had his disability accommodated, and did not engage the interactive process regarding his disability.

90. Defendant consistently does this to employees, ie. members of the Class, who have disabilities.

91. Class members were not and are not given a fair assessment of their need for a reasonable accommodation and, thus, Defendant failed to engage in the interactive process as to the Class.

92. Accordingly, Plaintiff and the Class seek their wages, back pay, front pay,

emotional distress damages, punitive damages, attorneys fees, costs, expenses, and any and all other remedies available under the law.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff and the Class respectfully request the following relief:

A. For the first cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

B. For the second cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements; and

C. For such other and further relief as the Court deems just and proper.

Dated: Dallas, Texas
January 19, 2024

                                                      THE HARMAN FIRM, LLP

                                                     By: _____
                                                     Walker G. Harman, Jr.
                                                     824 Exposition Ave.,
                                                     Suite 8
                                                     Dallas, Texas 75226
                                                     (646) 248-2288
                                                     wharman@theharmanfirm.com
                                                     *Attorney for Plaintiff*